481 So.2d 1212 (1985)
James Harold THOMPSON, As a Citizen and Taxpayer of the State of Florida, Petitioner,
v.
The Honorable D. Robert GRAHAM, Governor of the State of Florida, and George Firestone, Secretary of State of the State of Florida, Respondents.
No. 67433.
Supreme Court of Florida.
December 19, 1985.
Rehearing Denied February 19, 1986.
*1213 Barry Richard, of Roberts, Baggett, LaFace & Richard, Tallahassee, for petitioner.
John K. Aurell, John Radey and Elizabeth McArthur, of Aurell, Fons, Radey and Hinkle, Tallahassee, Sydney H. McKenzie, III, Gen. Counsel and Arthur R. Wiedinger, Jr., Asst. Gen. Counsel, Office of the Governor, Tallahassee, and Thomas G. Tomasello, Gen. Counsel, Dept. of State, Tallahassee, for respondents.
McDONALD, Justice.
We have before us a petition for a writ of mandamus asking that we direct the secretary of state to expunge certain of the governor's vetoes from the state's official records. We have jurisdiction pursuant to article V, section 3(b)(8), Florida Constitution, and we decline to issue the writ.
The 1985 legislature enacted committee substitute for senate bill 848, a bill which amended chapters 235 and 203, Florida Statutes, and which authorized and provided funds for specific public education capital outlay (PECO) projects. In June 1985 the governor vetoed several of the specific appropriations in section 35 of CS/SB 848. Claiming that CS/SB 848[1] is not a general appropriations bill and, therefore, is not subject to the governor's line item veto provided for in article III, section 8(a) of the state constitution, the Florida House of Representatives filed this petition for writ of mandamus. The governor responded to the petition and also filed a motion to dismiss claiming that the house lacks both capacity to sue and standing to seek the requested relief. Thompson, speaker of the house, then joined the suit, petitioning as a citizen and taxpayer of the state.[2] We disagree with Thompson and hold that the appropriations contained in CS/SB 848 are subject to the line item veto.
The 1968 Constitution, in dealing with vetoes, provides:
In all cases except general appropriations bills, the veto shall extend to the entire bill. The governor may veto any specific appropriation in a general appropriation bill, but may not veto any qualification or restriction without also vetoing the appropriation to which it relates.
*1214 Art. III, § 8(a), Fla. Const. Article IV, section 18 of the predecessor 1885 Florida Constitution provided in part: "The Governor shall have power to disapprove of any item or items of any bills making appropriations of money embracing distinct items."
In Brown v. Firestone, 382 So.2d 654 (Fla. 1980), we noted the concerns of the Constitutional Revision Commission about this Court's decision in Green v. Rawls, 122 So.2d 10 (Fla. 1960), which seemingly construed article IV, section 18 to authorize the governor to veto an appended qualification in the use of an appropriated item without vetoing the appropriation itself. We concluded that "the principal motivation behind revision of article IV, section 18, was to prevent the governor from altering legislative intent by requiring him to veto both a qualification or restriction and the appropriation to which it relates. 382 So.2d at 668. It was "to prevent the creative exercise of the gubernatorial veto." Id. at 667. In Brown we made it clear that under the current veto provision the governor cannot do this. He must accept the appropriation with the qualification or must reject it all. We do not believe the 1968 change otherwise modified the governor's veto powers as it related to appropriations.
Chapter 216, Florida Statutes (1983), sets out the general state budget process. That chapter defines an appropriations act as
the authorization of the Legislature, based upon legislative budgets ..., for the expenditure of amounts of money by an agency and the legislative branch for stated purposes in the performance of the functions it is authorized by law to perform.
§ 216.011(1)(c), Fla. Stat. (1983). By statute the commissioner of education is directed to submit a budget covering PECO projects to the legislature, which budget request will include the amounts of needed appropriations. § 235.41, Fla. Stat. (1983). Moreover, chapter 235 defines a capital project, for PECO purposes, as "sums of money appropriated from the Public Education Capital Outlay and Debt Service Trust Fund to the state system of public education and other educational agencies as authorized by the legislature." § 235.011(2), Fla. Stat. (1983). Finally, an appropriation is defined as "a legal authorization to make expenditures for specific purposes within the amounts authorized in the appropriations act." § 216.011(1)(b), Fla. Stat. (1983).
In its title CS/SB 848 states that it is an act "authorizing and providing funding for specified public educational capital outlay projects." The definitions set out lead to the conclusion that, in the context of this PECO bill, "authorizing and providing funding" is simply another way of saying "appropriating" and in our opinion comes within the definition of a general appropriations bill as it relates to the governor's veto power.
Thompson, to support his contention that CS/SB 848 is not a general appropriations bill, cites Bengzon v. Secretary of Justice, 299 U.S. 410, 57 S.Ct. 252, 81 L.Ed. 312 (1937). In Bengzon the Governor-General of the Phillipines used his line item veto to strike a single section, dealing with gratuities for justices of the peace, from a twelve-section act. The Court found the act not to be an appropriations bill on which the line item veto could be used. In so holding the Court defined both what an appropriations bill is and is not:
The term "appropriation act" obviously would not include an act of general legislation; and a bill proposing such an act is not converted into an appropriation bill simply because it has engrafted upon it a section making an appropriation. An appropriation bill is one the primary and specific aim of which is to make appropriations of money from the public treasury.
Id. at 413, 57 S.Ct. at 253. The Court then went on and stated: "To say otherwise would be to confuse an appropriation bill proposing sundry appropriations of money with a bill proposing sundry provisions of general law and carrying an appropriation as an incident." Id.
Seizing on the fact that only one of CS/SB 848's sections, covering twelve of *1215 the act's eighty pages, authorizes expenditure of funds, Thompson argues that any appropriations in the PECO bill are mere incidents to substantive legislation. Section 35 of CS/SB 848, however, contains eighty-six specific items and authorizes the expenditure of over a half billion dollars. We simply do not see how these appropriations are merely "incidental" and necessary solely to implement a substantive law as was the case in Bengzon. Each appropriated item is a distinct project and not dependent on any other; collectively, the allocated funds amount to a general appropriation for educational capital outlay. Except for the fact that each is an educational project item, there is no direct relationship between those items vetoed by the governor and those allowed to become law.
Article III, section 8(a) gives the governor the power to "veto any specific appropriation in a general appropriation bill." "An item of an appropriation bill obviously means an item which in itself is a specific appropriation of money, not some general provision of law which happens to be put into an appropriation bill." Bengzon, 299 U.S. at 414-15, 57 S.Ct. at 254.
Thompson argues that holding CS/SB 848 subject to the line item veto will infringe upon the legislature's prerogative to write the laws and to establish funding priorities. We do not agree. The veto power, while it can be used to nullify or suspend legislative intent, cannot be used to alter or amend legislative intent. Brown v. Firestone. The governor may not reassign vetoed moneys to other uses; he can neither create projects nor require the legislature to do so. The funds vetoed in this appropriation remain unexpended rather than being used for a different purpose.
The governor's veto power is balanced against the legislature's power. To do as this petition requests would have a chilling effect on this balance of power. We hold that the governor had the power to exercise the line item veto as to CS/SB 848, and we decline to issue the requested writ.
It is so ordered.
OVERTON, J., concurs.
BOYD, C.J., concurs with an opinion.
SHAW, J., concurs specially with an opinion.
ADKINS, J., dissents with an opinion.
EHRLICH, J., dissents with an opinion in which ADKINS, J., concurs.
BOYD, Chief Justice, concurring.
The issue before the Court is whether the gubernatorial item veto provided for by article III, section 8(a) of the Florida Constitution with regard to "general appropriation bills" is applicable to chapter 85-116, Laws of Florida. Article III, section 8(a) gives the Governor the authority to veto "any specific appropriation in a general appropriation bill." The Governor's position is that the several specific authorizations of capital projects set forth in section 35 of chapter 85-116 are specific appropriations in a general appropriation bill and are thus subject to the item veto. At the very least it cannot be said that it is clear the Governor has exceeded his authority in vetoing various specific provisions of chapter 85-116.[1] I therefore concur in the Court's denial of the petition for a writ of mandamus.
Chapter 85-116 amends various parts of chapters 203, 235, and 236, Florida Statutes (1983), including those portions of chapter 235 comprising the Educational Facilities Act of 1981. Chapter 85-116 also contains legislative authorizations for the funding of certain capital projects by the Public Education Capital Outlay and Debt Service *1216 Trust Fund. It might be suggested that chapter 85-116 violates the constitutional restriction in article III, section 6, Florida Constitution, requiring that "[e]very law shall embrace but one subject and matter properly connected therewith." See, e.g., Department of Education v. Lewis, 416 So.2d 455 (Fla. 1982); Brown v. Firestone, 382 So.2d 654 (Fla. 1980). On the other hand, it can very reasonably be argued that everything in chapter 85-116 embraces the single subject of public educational facilities to be constructed in the State of Florida or matters "properly connected therewith." In any event, we need not decide the question of the law's compliance with article III, section 6 because that question is not before us.
The position of the House of Representatives and its Speaker[2] is that the several specific authorizations of capital projects in the act are not appropriations in the constitutional sense, and that the fact that there are numerous such authorizations does not transform chapter 85-116 into a "general appropriation bill." In the House's view, the references to funding of specific projects in chapter 85-116 are "authorizations" within the meaning of article XII, section 9(a)(2), Florida Constitution, rather than appropriations. Pursuant to these authorizations, the House points out, the State Board of Education can disburse no more than the authorized amount on each of the authorized projects. The funding for the authorized projects is not derived from legislative appropriations for current expenses of the state but rather from bonds issued by the State Board of Education. The bonds are in turn retired by means of periodic payments from the Public Education Capital Outlay and Debt Service Trust Fund.
Article XII, section 9(a) establishes the capital outlay trust fund and designates a certain regular periodic revenue source, the gross receipts tax, for deposit into the fund. Article XII, section 9(a)(2) provides in part that "no bonds, except refunding bonds, shall be issued, and no proceeds shall be expended for the cost of any capital project, unless such project has been authorized by the legislature." It is in pursuance of this provision that the legislature must provide authorization for capital projects to be financed by the capital outlay trust fund and that is what the legislature did in chapter 85-116. After the legislature has given its approval to such projects, the State Board of Education and the Commissioner of Education proceed to arrange for their funding as provided by the substantive provisions of the Florida School Code. See §§ 235.41, 235.42, 235.4235, 235.435, Fla. Stat. (1983). Thus the House concludes that the items the Governor vetoed were authorizations of projects to be financed through constitutionally sanctioned bonded indebtedness and not direct appropriations for expenditures on current government expenses.
Regardless of whether the money for the capital projects is to come from the expenditure of current revenues or from bond proceeds to be repaid by future revenues, it seems clear that the "authorizations" in section 35 of chapter 85-116 are appropriations of state taxpayers' money to the state budget for the purpose of meeting the current expenses of the state. The gross receipts tax provided by chapter 203, Florida Statutes (1983), and placed in the capital outlay trust fund pursuant to article XII, section 9(a) of the constitution, is imposed upon suppliers of certain kinds of utility services but is passed on to the general consuming public. Expenditures financed *1217 by bonds to be repaid by the trust fund are no less the resources of Florida's taxpayers than current revenues raised by the general sales tax. I can see no reason to distinguish these two kinds of expenditures for purposes of the veto power. Thus I conclude that such authorizations are "specific appropriations" within the meaning of article III, section 8. As for the question of whether they are "specific appropriations in a general appropriation bill," it is important to note that nothing in the Constitution or laws of Florida requires the legislature to adopt "appropriations for salaries of public officers and other current expenses of the state," art. III, § 12, Fla. Const., in a single general appropriations bill. The fact that chapter 85-116 authorizes expenditure of state funds on over eighty separate projects for a total of approximately $500,000,000 in the current fiscal year is enough to make it a general appropriations bill for purposes of article III, section 8.
For the foregoing reasons I concur in the Court's judgment upholding the Governor's vetoes and denying the petition for writ of mandamus.
SHAW, Justice, concurring specially.
The legislative act at issue, a committee substitute for Senate Bill 848 enacted by both houses, can be summarized as follows: Sections 1-27 contain substantial substantive amendments to chapter 235, Florida Statutes, entitled Educational Facilities Act; sections 28-32 amend various provisions of chapter 203, Florida Statutes, entitled Gross Receipts Tax; section 33 contains a severability clause; section 34 amends section 236.25, Florida Statutes (Supp. 1984), entitled District School Tax; section 35 appropriates over a half billion dollars for certain educational purposes during fiscal year 1985-86 and specifies various sums of money from this appropriation to be spent for selected purposes; section 36 makes section 216.301(3)(a), Florida Statutes, applicable to chapter 84-542, Laws of Florida; section 37 appropriates $77,604,498 pursuant to section 216.301(2)(a), Florida Statutes; sections 38-41 pertain to special authorizations for selected educational institutions; and section 42 provides for an effective date of not later than 1 July 1985.
As in Brown v. Firestone, 382 So.2d 654 (Fla. 1980), we are called on to "define and delineate the relationship between the gubernatorial veto power and the legislature's authority to enact general appropriations law." Id. at 663. The Governor has exercised a line item veto of certain specific appropriations in section 34 of the act, purportedly under the authority of article III, section 8(a) of the Florida Constitution.[1] Petitioner challenges these vetoes on the ground that this act is not a general appropriations act and, thus, the Governor does not have the power to veto specific appropriations. It is the position of petitioner that the Governor may only veto or approve the act in its entirety. I write separately because, in my view, neither the majority nor the dissenters have fully analyzed the various constitutional provisions bearing on this controversy. For the reasons below, regardless of whether the act is treated as a general act or an appropriations act, I conclude that it contains more than one subject and thus violates either section 6 or section 12 of article III of the Florida Constitution.[2]
*1218 In Brown v. Firestone, the Governor vetoed, inter alia, two provisos relating to specific appropriations in the General Appropriations Act of 1979, but not the specific appropriations themselves. It was the Governor's position that these provisions unconstitutionally violated article III, section 12 by attempting either to enact law on other subjects in an appropriations bill or to repeal or suspend existing law in an appropriations bill. It was the position of the petitioners in Brown that the Governor violated the provisions of article III, section 8(a), by vetoing the provisos without vetoing the specific appropriations to which they related. Because of the peculiar posture of the controversy in Brown, we recognized that we were in a quandary: if we looked first to the legislative provisos and found them unconstitutional, the propriety of the Governor's vetoes would be immaterial; if we looked first at the propriety of the Governor's vetoes and held them to be constitutional, the validity of the provisos would be immaterial. Our resolution of this quandary was "to consider the validity of both the vetoes and the legislative provisos to which they relate" in the hope "that our efforts will serve to illuminate and clarify the intrinsic elements of this complex problem." Brown v. Firestone at 663. In my view, we are faced with a similar dilemma here: if the act unconstitutionally contains more than one subject, the propriety of the Governor's vetoes are immaterial; if we restrict ourselves to the constitutionality of the vetoes, the validity of the act is not at issue.[3] It is my view, however, that as in Brown v. Firestone, we should address both of these issues.
I turn then to the question of whether the act contains more than one subject. Section 6 of article III provides that "[e]very law shall embrace but one subject and matter properly connected therewith," while section 12 of article III provides that "[l]aws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject." In Brown v. Firestone, we recognized the obvious interrelationship between these two sections: "Section 12 was intended as a corollary to Article III, section 6." Id. at 663. The effect of section 12 is to constitutionally define "appropriations for salaries of public officers and other current expenses of the state" as a separate subject which cannot be combined in a single act with another subject. If such appropriations are a separate subject under section 12 and cannot be combined with another subject, it is sophistry to maintain that they are not a separate subject under section 6 and may be combined with another subject. If this were so, the legislature would be in a position, through adroit labelling, simultaneously to avoid the constitutional restriction of section 12 and to obviate the Governor's power to veto specific appropriations under section 8(a). Petitioner does not deny, indeed it positively asserts, that the act contains substantial amendments to chapters 235 and 203 and that the inclusion of the contents of these amendments in a general appropriations bill would be indisputably unconstitutional. I agree. However, I disagree with petitioner's assertion that these appropriations are not for current expenses of the state. Section 34 of the act appropriates money from trust funds to meet educational expenses of the state for fiscal year 1985-86. For the reasons discussed I conclude that the act contains more than one subject and is unconstitutional under either or both sections 6 and 12.
On the issue of the Governor's line item veto power, I find that "general appropriation bills" as used in section 8(a) is indistinguishable from "[l]aws making appropriations for salaries of public officers and other current expenses of the state" as used in section 12. I agree with respondent that the Governor's line item veto power is not affected by the number of general appropriations bills which the legislature, *1219 in its discretion, may choose to pass and send to the Governor for review. Whether there be one or many general appropriations bills, the Governor may veto specific appropriations subject to the constraints of Brown v. Firestone.
In summary, as discussed above, I would affirm the Governor's veto power but also declare the act to be an unconstitutional violation of the one-subject restriction of article III, sections 6 and 12 of the Florida Constitution.
ADKINS, Justice, dissenting.
I dissent. Article IV, section 18, Florida Constitution (1885) provided:
The Governor shall have power to disapprove of any item or items of any bills making appropriations of money embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items of appropriation disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills over the Executive veto. (Emphasis supplied.)
The Constitution was revised in 1968. Article III, section 8, Florida Constitution (1968) authorizing executive veto, contains the following:
In all cases except general appropriation bills, the veto shall extend to the entire bill. The governor may veto any specific appropriation in a general appropriation bill, but may not veto any qualification or restriction without also vetoing the appropriation to which it relates. (Emphasis supplied.)
The majority sees no change in these provisions. Common sense dictates a different construction. As stated by Talbot "Sandy" D'Alemberte in his Commentary about Article III, section 8, 25A Florida Statutes Annotated 674:
The scope of the executive veto power over appropriations was apparently broader under Section 18, Article IV of the 1885 Constitution. There, he was given "power to disapprove of any item or items of any bills making appropriations of money embracing distinct items ..." "Any bills" is certainly broader than the phrase "general appropriation bills."
The majority opinion refuses to recognize the common acceptance and definition of "General Appropriation." This gives an unfortunate result.
We have said:
Provisions in a General Appropriations Bill on any subject other than "appropriations for salaries of public officers and other current expenses of the State" and matters reasonably related thereto are invalid and are not law.
In Re Opinion To The Governor, 239 So.2d 1 (Fla. 1970).
CS/SB 848 deals with subjects other than appropriations. The majority opinion construes this law as a "general appropriations law," but fails to explain the effect of Article III, section 12, Florida Constitution, which reads:
Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject.
It is fundamental that the legislature can exercise any power not prohibited by the Constitution, while the governor can exercise only those powers granted by the Constitution. The majority opinion qualifies this rule, so that the governor may now exercise such powers as may be granted by the Constitution or the Supreme Court.
EHRLICH, Justice, dissenting.
With all deference to my brethren of the majority, I do not believe they have made a proper analysis of the provisions of our state constitution which control the outcome of this case. Nowhere in the majority opinion is there a discussion of what is a "general appropriation bill." Seemingly, the Court is saying that an appropriation bill is an appropriation bill and that all appropriation bills are the same and that hence the governor's line item veto is applicable to any appropriation bill. I do not believe this is the case.
*1220 Article III, section 8(b) gives the governor the authority to "veto any specific appropriation in a general appropriation bill." In all other cases, the governor's veto extends to the entire bill. The issue before us is whether CS/SB 848 is "a general appropriation bill" within the meaning of article III, section 8(a). Unfortunately, the Constitution does not supply us with a clear definition of that term.
Article III, section 12 provides "Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject." This Court had occasion to construe that identical language which was contained in article III, section 30, of the 1885 constitution in the case of Amos v. Moseley, 74 Fla. 555, 77 So. 619 (1917):
This provision of the Constitution must be considered in its entirety, and, when so construed, it becomes apparent that it refers to what is known as the general appropriation bill. No more apt words than "salaries of public officers and other current expenses of the state" could be used to describe the law in which such appropriations are made at each legislative session.
Id. at 570, 77 So. at 623 (emphasis supplied).
I accept this Court's early definition that the general appropriation bill is one that makes appropriations for salaries of public officers and other current expenses of the state. CS/SB 848 is clearly not a general appropriation bill. It is indeed an appropriation bill because it does appropriate money for Florida's educational system, but does not provide for salaries of public officers and other current expenses.
Narrowly construing what constitutes a "general appropriation bill" for purposes of article III, sections 8(b) and 12, correctly balances the competing public policies at issue here. The sections are designed to prevent the legislature from logrolling when its power to do so is strongest, i.e. when appropriations for salaries and current expenses are made. Without the limitation on legislative drafting in section 12, the legislature would be able to impose all but the most objectionable measures upon the people of this state, effectively denying them the protection of the gubernatorial veto. Without gubernatorial power to line-item veto general appropriation bills pursuant to section 8(b), the legislature would likewise be able to authorize all but the most objectionable expenditures. In both cases, the governor would have the draconian choice of paralyzing the day-to-day operations of the entire state government by vetoing the entire bill, or abrogating his constitutional duty to serve as a check to unfettered legislative power.
When an appropriations bill is not a general appropriation bill, i.e. when it is not one appropriating salaries and current expenses, the threat of unfettered legislative power is lessened. Such appropriations bills concern matters other than day-to-day operations of all or a substantial part of state government. The choice imposed on the governor and the necessity for deviating from the normal system of checks and balances are less compelling. The single-subject provision of article III, section 6, guarantees that appropriation bills other than general appropriation bills, regardless of whether they contain matter other than appropriations, will be of limited scope, and thus a veto will have only limited impact.
If one were to construe the term "general appropriation bill" as broadly as the majority does here, then there is little to distinguish, on policy grounds, between allowing the governor to line-item veto any appropriation, and denying him the power to veto only sections of non-appropriation bills. Partial veto of bills is denied because allowing the governor to do so would give him the power in effect to rewrite legislation to his own liking. This would disrupt the balance of power in favor of the executive. I conclude the power to line-item veto appropriations in this case is such a disruption clearly not intended by the framers. This is especially clear in light of the narrow interpretation of "general appropriation bill" found in Amos and the cases cited therein, an interpretation the framers of *1221 the 1968 constitution presumably understood and were free to alter, had they so desired.
It is my opinion, therefore, that the veto proscription contained in article III, section 8(b) is applicable to the vetoes in question.
I therefore dissent.
ADKINS, J., concurs.
NOTES
[1] Ch. 85-116, Laws of Fla.
[2] Because Thompson as a citizen and taxpayer of the state clearly has standing to bring this suit, Brown v. Firestone, 382 So.2d 654 (Fla. 1980); Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972), we need not decide in this opinion the question of whether the house, or Thompson as speaker of the house, has capacity or standing to bring this action. Thus, we decide this case as though Thompson were the sole petitioner. We reserve the right, at our option, to deal with this issue by separate order.
[1] Mandamus is available as a method of enforcing a clearly established legal right but not as a means of litigating and establishing a disputed right. See, e.g., Department of Health and Rehabilitative Services v. Hartsfield, 399 So.2d 1019 (Fla. 1st DCA 1981). On the other hand, this Court has taken a somewhat flexible approach to the exercise of our original jurisdiction for the purpose of settling disputes such as this. See, e.g., Brown v. Firestone, 382 So.2d 654 (Fla. 1980).
[2] I believe the House of Representatives has the capacity to bring an action like this. See The Florida Senate v. Graham, 412 So.2d 360 (Fla. 1982). By its Rule 2.4, the House has authorized the Speaker to undertake such litigation on its behalf. Moreover, I believe that the House's standing to challenge the Governor's vetoes is superior to, or at least equal to, that of an ordinary taxpayer. As one of the houses of the Legislature that enacted the law, the House suffers a special injury if the Governor exceeds his authority in exercising the veto power. On the other hand, an ordinary citizen and taxpayer has no special injury as a taxpayer if the governmental action being challenged will not result in an expenditure of funds but in the withholding of taxpayers' funds from expenditure.
[1] Section 8(a) reads in pertinent part:

In all cases except general appropriations bills, the veto shall extend to the entire bill. The governor may veto any specific appropriation in a general appropriation bill, but may not veto any qualification or restriction without also vetoing the appropriation to which it relates.
[2] Sections 6 and 12 read:

SECTION 6. Laws.  Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title. No law shall be revised or amended by reference to its title only. Laws to revise or amend shall set out in full the revised or amended act, section, subsection or paragraph of a subsection. The enacting clause of every law shall read: "Be It Enacted by the Legislature of the State of Florida:".
SECTION 12. Appropriation bills.  Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject.
[3] Respondent does not challenge the constitutionality of the act.