542 So.2d 358 (1989)
Bob MARTINEZ, Etc., Appellant,
v.
The FLORIDA LEGISLATURE, Etc., et al., Appellees.
No. 73601.
Supreme Court of Florida.
March 23, 1989.
Rehearing Denied May 16, 1989.
Peter M. Dunbar, Gen. Counsel, Office of the Governor, and Alan C. Sundberg, Cynthia S. Tunnicliff, Mary E. Haskins and W. Douglas Hall of Carlton, Fields, Ward, Emmanuel, Smith and Cutler, P.A., Tallahassee, for appellant.
Kevin X. Crowley of Cobb, Cole & Bell, Gen. Counsel to Florida House of Representatives, Thomas Ross McSwain, Tallahassee, Deputy Gen. Counsel to The Florida Senate and co-counsel to the Florida Senate, Arthur J. England, Jr. and Linda A. Wells of Fine, Jacobson, Schwartz, Nash, Block & England, Miami, Special Counsel to the Florida Legislature, and Robert A. Butterworth, Atty. Gen., Louis F. Hubener, Asst. Atty. Gen., Chief, Appellate Branch and Mitchell D. Franks, Asst. Deputy Atty. Gen., Tallahassee, counsel to Jim Smith, Secretary of State, and Gerald Lewis, Comptroller, for appellees.
*359 McDONALD, Justice.
The First District Court of Appeal has certified the trial court's final judgment in this cause as involving issues of great public importance which require immediate resolution. We have jurisdiction pursuant to article V, section 3(b)(5) of the state constitution. At issue are Governor Martinez' vetoes of portions of specific appropriations. We find an improper exercise of the gubernatorial veto and affirm the trial court's rulings.
On June 8, 1988 the legislature adopted chapter 88-555, Laws of Florida, the general appropriations act of 1988. On June 29 Governor Martinez vetoed more than 150 specific line item appropriations contained in that act. He also vetoed five portions of specific appropriations. In September the legislature and five of its members,[1] in their official capacity and as citizens and taxpayers, petitioned this Court for a writ of mandamus to expunge the five partial vetoes. This Court granted Martinez' motion to dismiss in favor of a declaratory judgment action in circuit court.
The legislature then brought suit in circuit court to have the partial vetoes declared unconstitutional. As affirmative defenses, Martinez claimed: 1) the legislative intent documents (the statement of intent and legislative working papers), containing the five disputed items, constituted specific appropriations and had been incorporated by reference into the general appropriations bill by a letter from the chairs of the legislative appropriations committees;[2] 2) the suit failed to state a cause of action; and 3) the individual legislators lacked standing to sue. Martinez also counterclaimed against the individual legislators for a declaration of the legal effect and significance of the legislative intent documents. Finally, Martinez cross-claimed against the secretary of state (Smith) and comptroller (Lewis) as to the significance of the intent documents and the constitutionality of the implementing and conforming acts (chapters 88-556 and 88-557, Laws of Florida) pertaining to the general appropriations act.
The legislature moved for final summary judgment, the individual legislators moved to dismiss the counterclaim, and Smith and Lewis moved to abate consideration of the cross-claim pending disposition of the main action. The court heard the legislature's motions for summary judgment and dismissal *360 on December 22. A week later the court ruled in the legislature's favor and ordered Smith to expunge the five partial vetoes from the state records. The court also dismissed the counterclaim with prejudice and declared the cross-claim moot. Martinez appealed to the first district, which, upon the legislature's petition, certified the case to this Court.
Section 8(a) of article III, Florida Constitution, provides that "[t]he governor may veto any specific appropriation in a general appropriation bill, but may not veto any qualification or restriction without also vetoing the appropriation to which it relates." The basic requirements for a veto, therefore, are 1) a specific appropriation which is part of 2) an appropriations bill. We agree with the trial court and the legislature that the vetoes at issue do not meet those requirements.
The instant vetoes dealt with one appropriation to the Department of Agriculture and Consumer Services (number 118) and four appropriations to the Department of Education (numbers 528, 529, and 530). Each veto message begins the same: "The portion of Specific Appropriation," and each removes only part, not all, of an appropriation line in chapter 88-555. The first message vetoes $500,000 from the $7,400,000 appropriated in item 118; the second and third remove a total of approximately $279,000 from the $187,000,000 appropriated in item 528; the fourth takes $2,100 from the $6,900,000 appropriated in item 529; and the fifth vetoes $8,800 from the $75,000,000 appropriated in item 530.
The vetoed items are not listed in chapter 88-555. Instead, they appear in the summary statement of intent and computerized working papers, the so-called intent documents. Martinez argues that the statement of intent is an element of the general appropriations bill and that the letter transmitting the intent documents expressly incorporated the working papers into that bill. Therefore, according to the governor, any item in the working papers or statement of intent is subject to being vetoed as if it were a specific line item in chapter 88-555. The legislature, on the other hand, argues that, because they appear in working documents not adopted by the legislature, the vetoed items are not specific, identifiable appropriations adopted by the legislature in the general appropriations bill and that these vetoes do not meet the constitutional requirements.
Both sides rely on Brown v. Firestone, 382 So.2d 654 (Fla. 1980), in which this Court considered another challenge to the gubernatorial veto. Specifically, we had to decide if the veto could be exercised on provisos, contained within the appropriations bill and relating to specific appropriation lines, directing how portions of specific appropriations were to be spent.[3] In Brown we defined a specific appropriation as "an identifiable, integrated fund which the legislature has allocated for a specific purpose." Id. at 668. If a qualification or restriction in an appropriations bill sets apart an identifiable sum of money, that fund will be considered to be a specific appropriation because "it will most likely be the smallest identifiable fund to which the qualification logically relates." Id. We held that "[i]f the legislature deems it wise to appropriate a specific fund in a qualification or restriction, then the governor will be able to veto that qualification as a specific appropriation, just as he could have done had the legislature listed the fund as a separate line item." Id.
Martinez argues that Brown allows him to trace back from the broad line item appropriations through the summary statement of intent to the smallest identifiable funds in the legislative working papers. The legislature points out, however, that Brown explores the limits of the legislature's power to enact general appropriation law and the gubernatorial veto power and recognizes that single appropriation items can "be either general or quite specific depending upon the degree of particularization *361 employed by the legislature." Id. at 666. The vetoed items are unspecified parts of specific appropriations in chapter 88-555, and, therefore, the legislature contends that Martinez could veto the entire line items or nothing at all.
"[M]oney can be appropriated by the legislature only by means of a bill by it enacted into law with the formalities prescribed by the constitution for enacting bills into laws." In re Advisory Opinion, 43 Fla. 305, 309, 31 So. 348, 349 (1901) (emphasis in original). The heart of this matter is whether the statement of intent and the legislative working papers are part of the general appropriations bill enacted by the legislature. If they were not part of the general appropriations bill, the veto cannot reach them because the constitution permits the governor to veto only specific appropriations in a general appropriations bill.
The statement of intent comes from section 216.181(1), Florida Statutes (Supp. 1988),[4] which provides in part:
The statement of intent may not allocate or appropriate any funds, or amend or correct any provision, in the General Appropriations Act, but may provide additional direction and explanation to the Executive Office of the Governor, the Administration Commission, and each affected state agency relative to the purpose, objectives, spending philosophy, and restrictions associated with any specific appropriation category. The statement of intent shall compare the request of the agency or the recommendation of the Governor to the funds appropriated for the purpose of establishing intent in the development of the approved operating budget.
Martinez argues that, regardless of what section 216.181(1) says, the statement of intent and working papers are, in reality, integral parts of the general appropriations act.[5] The legislature, however, claims that the statute is unambiguous and, on its face, demonstrates the intent that the statement of intent and the working papers are not part of the appropriations bill.
We agree with the legislature. The statement of intent "may not allocate or appropriate any funds, or amend or correct any provision, in the General Appropriations Act." § 216.181(1). This language is unequivocal and unambiguous. The intent documents have not been enacted into law, *362 they are not part of the general appropriations bill, and the gubernatorial veto cannot reach them.
This holding raises the question of what are the statement of intent and the working papers if they are not part of the appropriations act. Martinez claims that, if they are not part of that act, their provisions are directory, not mandatory, and cannot be binding. The legislature, on the other hand, argues that the effect and significance of the statement of intent and working papers can only be determined in a declaratory judgment action, brought by the governor, to resolve that issue.
Be that as it may, this issue needs to be resolved, and we have decided to consider it. We find the statement of intent and working papers to be what they appear to be, a manifestation of how the legislature thinks, in its considered opinion as a representative of the people, appropriations should be spent. Those documents have not been enacted into law, however, and, thus, cannot have the force of law. Unless a specific appropriation is in a general appropriations bill or a specific legislative act, it is unenforceable. "The governor's veto power is balanced against the legislature's power." Thompson v. Graham, 481 So.2d 1212, 1215 (Fla. 1985). The legislature cannot give the force of law to something which it refuses to enact into law. Although the legislature's intent is evidenced by the statement of intent and the working papers, the provisions in those documents cannot be binding. They are not equivalent to proviso language contained in a general appropriations bill enacted by the legislature.
Because the statement of intent and the working papers are not part of the appropriations bill, items in them cannot be vetoed. We therefore affirm the trial court's ruling that the partial vetoes of line items 118, 528, 529, and 530 be expunged from the state records. We also hold that, although persuasive, the statement of intent and working papers are directory, not mandatory.[6]
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Jon L. Mills, Tom Gustafson, Samuel P. Bell, III, John W. Vogt, and Robert (Bob) Crawford.
[2] The text of the transmittal letter, signed by Samuel P. Bell, III, and James A. Scott, the respective appropriations committees' chairmen, reads as follows:

Pursuant to the provisions of Section 216.181(1), Florida Statutes, we are jointly transmitting herewith the General Appropriations Act, Summary Statement of Intent, and detailed legislative intent in the form of computerized workpapers (D-3A's) for each department. These workpapers are provided through computer releases and reflect the Agency's Request, Governor's Recommendation and Legislative Appropriations. The summary document compares the Governor's Amended Budget Recommendations to the funds appropriated for the 1988-89 Fiscal Year. Pursuant to Chapter 216, Florida Statutes, the Appropriations Act and the intent documents are to be considered the original approved budget for operational and fixed capital outlay expenditures for each state agency. Copies of the computerized workpapers have been provided to the Office of the Auditor General.
In addition to the General Appropriations Act and Summary Statement of Intent, [chapter 88-556, Laws of Florida], implementing and administering the General Appropriations Act, and [chapter 88-557, Laws of Florida], conforming statutes, should be used to interpret legislative intent.
Ch. 216, Fla. Stat. (Supp. 1988), sets out the general state budget process. Under it state agencies submit budget requests to the legislature and to the Executive Office of the Governor by November 1 of each even-numbered year. § 216.023. The executive office makes a detailed study of each agency and prepares an analysis of the legislative budget requests for the governor, § 216.151, who, 45 days before the session begins in odd-numbered years, sends a recommended budget to the legislature. § 216.162. After the legislature enacts the general appropriations bill, that bill, along with the statement of intent and working papers, is transmitted back to the governor and state agencies for implementation. § 216.181(1). The general appropriations act and supporting documents are the agencies' original approved operating budgets. § 216.181(3). Changes in appropriations may be approved by the executive office or by the administration commission. E.g., §§ 216.181(2), (8), (9), 216.292.
[3] For example, line item 382 appropriated moneys for the University of South Florida Medical Center's expenses, "`[p]rovided, however, $2,613,142 appropriated in item 382 in each fiscal year of the biennium is for the purpose of the teaching hospital program.'" Brown v. Firestone, 382 So.2d 654, 658 (Fla. 1980). Governor Graham vetoed the proviso.
[4] As originally reenacted by ch. 69-106, § 31, Laws of Fla., section 216.181(1) provided that "the chairmen of the legislative appropriations committees jointly shall furnish information to the director of planning and budgeting and the legislative auditor relative to legislative amendments, if any, to the legislative budgets submitted pursuant to" state law. § 12, ch. 71-354, Laws of Fla., amended the section to change the furnishing of information to the department of administration and the auditor general. Six years later the legislature amended § 216.181(1) so that the appropriations chairs would "transmit" information to the department and auditor "relative to differences, if any, between the general appropriations act and" the agency budget requests. Ch. 77-352, § 11, Laws of Fla. In 1979 the legislature created the Executive Office of the Governor, transferred the department of administration's planning functions to that office, and amended § 216.181(1) to provide for transmittal of a "statement of intent," which "shall act as additional directions to the office and each affected state agency relative to the purpose, objectives and spending philosophy of the appropriations act." Ch. 79-190, §§ 1, 10, 14, Laws of Fla. Ch. 83-49, § 14, Laws of Fla., amended § 216.181(1), in part, as follows:

The statement of intent shall not amend or correct any provision in the General Appropriations Act, but may provide additional direction and explanation to the Executive Office of the Governor, the Administration Commission and each affected state agency relative to the purpose, objectives, spending philosophy and restrictions associated with any specific appropriation category. The statement of intent shall compare the agency's request or the governor's recommendations to the funds appropriated for the purpose of establishing intent in the development of the approved operating budget.
Ch. 87-548, § 63, Laws of Fla., amended § 216.181(1) to provide that the statement of intent additionally may not "allocate or appropriate any funds."
[5] Martinez relies on United Faculty of Florida v. Board of Regents, 365 So.2d 1073, 1077 (Fla. 1st DCA 1979), in which the district court characterized the statement of intent as binding and an "element" of the appropriations bill. The court did not consider the gubernatorial veto, but, rather, whether the legislature had appropriated less than requested in an agency budget. United Faculty is not on point, therefore, and we do not find it persuasive.
[6] Due to these holdings, we do not find it necessary to address the other issues raised on appeal.