STATE OF FLORIDA, ex rel., H. C. SCHWARTZ, individually and as Mayor of the City of Hallandale, Florida, et al., v. LAMAR BLEDSOE, as Chief Clerk of the House of Representatives of the Legislature of the State of Florida, et al.

31 So. (2nd) 457                                              June Term, 1947
July 8, 1947                                                      En Banc
Rehearing denied July 9, 1947

*Keen & O'Kelley, J. Velma Keen* and *Chas. H. Spitz,* for relators.

*Parker, Foster & Wigginton,* for respondents.

CHAPMAN, J.:

This is a case of original jurisdiction in mandamus. It has been made to appear by petition for an alternative writ of mandamus that House Bill 122 was introduced into the Florida Legislature on April 15, 1947. It is a local Bill and provides for an election to determine whether or not the corporate

limits of the municipality of Hallandale, Broward County, Florida, should be extended to include a certain area described in the Act. On April 17, 1947, it passed the House and was promptly certified to the Senate, when Section 1 was amended and duly passed the Senate as amended and certified to the House of Representatives where, on the 7th day of May, 1947, the House considered the Senate's amendment, which was by the House duly approved and concurred in. The measure was engrossed and enrolled, signed by the presiding officers of the House of Representatives and the Senate, the Chief Clerk of the House of Representatives and the Secretary of the Senate, and on May 8, 1947, House Bill 122 was duly presented to the Governor of Florida for his consideration and approval.

On May 12, 1947 on motion of Representative Sterling of Broward County, the House of Representatives voted to recall from the Governor's office House Bill 122 and the measure on the following day, May 13, 1947, pursuant to the House's request, was by the Governor of Florida duly returned to the House of Representatives as had by it been requested. On the motion Representative Sterling of Broward the vote by which House Bill 122 passed the House of Representatives was duly brought up and reconsidered. After a vote to reconsider the measure had been adopted by the House of Representatives, the Bill was placed back on second reading and in its regular routine, upon further consideration of House Bill 122 the House, by a majority vote went on record and favored an indefinite postponement thereof. On June 6, 1947, the Legislature of Florida adjourned sine die. The Speaker of the House and the Chief Clerk were requested to transmit enrolled House Bill 122 to the office of Secretary of State, which demand was refused, but it is alleged that it is the legal duty of these officials having the custody and control of enrolled House Bill 122 to return the same pursuant to law to the office of the Secretary of State. An alternative writ of mandamus was issued on the aforesaid petition and served upon the respondents.

Section 15.07, Fla. Stats. 1941 (FSA) provides:

"All original acts and resolutions passed by the Legisla-

ture, and all other original papers acted upon thereby, together with the journal of the Senate, and the journal of the House of Representatives, shall, immediately upon the adjournment thereof, be deposited with, and preserved in, the office of the Scretary of State, by whom they shall be properly arranged, classified, and filed, provided that the journal of the executive session of the Senate shall be kept free from inspection or disclosure except upon the order of the Senate itself or some court of competent jurisdiction."

House Rule 47 provides:

"All House Bills and Memorials shall be introduced in quadruplicate. Six copies of all House Resolutions, House Concurrent Resolutions and House Joint Resolutions shall be introduced. The original copy of all House Bills, House Resolutions, House Joint Resolutions, House Concurrent Resolutions, and Memorials shall be on good bond paper. Each copy of House Bills and Memorials shall be accompanied by a title slip on which shall be entered in full the exact title thereof. The Sergeant-at-Arms is hereby authorized and directed to furnish to the press and public the triplicate copies of such bills and resolutions for examination and he is authorized to call to his assistance such person as he may need as custodian of these files known as 'Triplicate Files.' Any person authorized hereunder to obtain the triplicate copies of such bills and resolutions for examination shall sign a receipt before obtaining same from the Sergeant-at-Arms, and the use by any person of these triplicate copies shall be temporary and not permanent, and all copies must be returned to the office of the Sergeant-at-Arms without unnecessary delay."

The return of the respondents to the alternative writ of mandamus discloses that the parties hereto are in accord as to the facts in controversy. Paragraph VIII of the returns shows that Bill 122 is in possession of the Chief Clerk of the House and is now being preserved as a permanent record. Paragraph IX of the return specifically denies that House Bill 122 is an original act of the Legislature of the State of Florida, but alleges that the original act, within the contemplation of Section 15.07, supra, is the document originally introduced and deposited with the Secretary of State. Paragraph X of

the return shows that the respondents under Section 15.07 deposited House Bill 122 with the Secretary of State on July 11, 1947. That respondents refused and continue to refuse to deposit with the Secretary of State enrolled House Bill 122 because the enrolled Bill is not an original Act of the 1947 Session of the Legislature. The law does not make it the duty of the respondents to deposit with the Secretary of State enrolled House Bill 122 upon the adjournment of the Legislature.

Paragraph XI of respondents return shows that the words in Section 15.07, supra, viz: "all original acts and resolutions passed by the Legislature" and "a duly authorized and certified enrolled bill of the Legislature" are not one and the same instrument. The term "all original acts and resolutions passed by the Legislature," as used in Section 15.07, supra, refer solely and only to the original bill which was introduced into the Legislature, with proper endorsements disclosing the various steps taken in the passage of the Act. Paragraph XII of the return sets up that the indefinite postponement of House Bill 122 by the House of Representatives was concluded within five days after the bill was transmitted to the Governor's office for his approval. It was clearly the intention of the House of Representatives that the Bill should not become a law. Paragraph XIII sets up that the request by the House of the Governor for the return of House Bill 122 is the prevailing practice and custom followed by this and previous sessions of the Florida Legislature . . . ; when a recalled measure was returned, the House would reconsider the vote by which the measure was passed and then by a majority vote of the House the said measure would be indefinitely postponed. Paragraph XIV set out that if an enrolled Bill is held to be an original Act of the Legislature, within the meaning of Section 15.07, supra, then the Governor is deprived of his constitutional prerogative of having ten days after date of adjournment to approve or disapprove the same.

The relators filed a motion for a peremptory writ of mandamus notwithstanding the return of the respondents on the grounds: (1) that the return is insufficient in law and fact; (2) the return shows that the respondents failed to comply

with the mandates of Section 15.07, F.S.A., and cannot legally refuse to deposit with the Secretary of State enrolled House Bill 122 as presented to the Governor; (3) the custom and usage pleaded in the return is legally insufficient to overcome the established law relative to the power of a single House of the Legislature to recall a duly enrolled Bill from the Governor; (4) the return of the respondents is legally insufficient.

The commands of the alternative writ require the respondents Thomas D. Beasley, as Speaker, and Lamar Bledsoe, as Chief Clerk of the House of Representatives, to deposit in the office of the Secretary of State House Bill 122 as duly enrolled and signed and presented to the Governor of Florida. If the respondents default in performing the acts and doings aforementioned, then may each of them be required on short notice to show cause why they fail to comply with and abide by the orders and decrees of this Court?

Counsel for relators contend that the hereinafter stated question should be answered in the affirmative, while counsel for the respondents contend that the correct answer thereto is "no." The question is viz: Is an enrolled Bill properly authenticated and certified by the appropriate officials of the House of Representatives and Senate of the State of Florida, an original Act of the Legislature within the purview and contemplation of Section 15.07, Fla. Stats. 1941, requiring that the original Acts and Resolutions passed by the Legislature be deposited with and preserved in the office of the Secretary of State immediately upon the adjournment thereof?

It is established law that where a legislative Bill, regular on its face, has been signed by the legislative officers who by the constitution are mandatorily required to sign "all Bills" passed by the Legislature, and the Bill is approved and signed by the Governor and by him filed in the office of the Secretary of State within the time fixed by the constitution for the Governor to approve or disapprove it, then such Bill is a record of official acts of the Legislature and executive department of the government and such bill then becomes a law. Amos v. Gunn, 84 Fla. 285, 94 So. 615. The duty of designated legislative officers to sign all duly passed bills is made absolute by the constitution and such official duties continue until

properly performed to authenticate the Bill to the Governor in due time for his official action within the time fixed by the constitution.

A bill is a proposition reduced to writing, submitted to the consideration of the Legislature and when it has received the endorsement or support of a majority of the votes of the members present of each House, and a yea and nay vote taken on final passage entered upon the Journals of each House, it is said to have passed. Amos v. Gunn, supra. Section 28 of Article III of the Constitution provides that every bill that has been passed by the Legislature shall, before becoming a law, be presented to the Governor. If he approves it he shall sign it, but if not he shall return it with his objections to the House in which it originated. If any bill shall not be returned within five days (Sunday excepted) the same shall be a law in like manner as if he had signed it. It is a declaration of the two Houses, through their presiding officers, to the Governor that a bill thus attested has received in due form the sanction of the legislative branch of the government and it is delivered to him in obedience to the constitutional requirements that all bills which the Legislature passes shall be presented to the Governor.

The return of House Bill 122 by the Governor to the House of Representatives pursuant to a request in the form of a resolution adopted by it, as disclosed by this record, was not done or performed by the Governor in obedience to a constitutional or statutory duty but at most was an act of courtesy which he had the power either to grant or refuse. The return of House Bill 122 by the Governor to the House of Representatives could not constitutionally confer on this Honorable Body the jurisdiction or power again to place the measure on its calendar and by a majority vote of the House reconsider the vote by which it was originally passed or to entertain a motion and by a majority vote to indefinitely postpone the bill. It is not disputed that House Bill 122 was regular on its face, had the signatures of the legislative officers and had been authenticated and transmitted to the Governor as a bill approved both by the Senate and House of Representatives.

The case of State ex rel. Florida Portland Cement Co. v. Hale, 129 Fla. 588, 176 So. 577, involved legislative proceedings similar to the action concerning House Bill 122 now before us. There was no joint action of the House and Senate asking a return of the bill from the Governor to either branch of the Legislature and there was no action on the bill after its return to the House of Representatives by the Governor. This Court approved the language employed in a Virginia case (Wolfe v. McCaull, 76 Va. 876) viz: "It is plain that the action of the Governor was a mere act of courtesy on the part of one coordinate branch of the Government toward another and was not intended and can not be construed as a compliance with the requirements of the Constitution, that if he did not approve it he should return it (the bill) with his objections to the House in which it shall have originated. . . ," and in parts said (text 129 Fla. 598-599):

"We hold that neither the House of Representatives nor the Senate of the Legislature of Florida could by its independent resolution recall from the hands of the Governor a bill which had been duly passed by the Legislature, had been authenticated and transmitted to the Governor for his consideration, and that the action of the Governor in transmitting the bill to the house of Representatives in the instant case was a matter of courtesy and had no effect upon the validity of the Act which had been duly and constitutionally passed and transmitted to him for his consideration."

The rule supra was reaffirmed in Jordan v. Gessner, 153 Fla. 498, 15 So. (2nd) 189. See State ex rel. Thompson v. Davis, 124 Fla. 592, 169 So. 199; State ex rel. Lane Drug Stores v. Simpson, 122 Fla. 671, 166 So. 262; State ex rel. X-Cel Stores, Inc. v. Lee, 122 Fla. 685, 166 So. 568; State ex rel. Landis v. Thompson, 120 Fla. 860, 163 So. 270; Croissant v. DeSoto Improvement Co., 87 Fla. 530, 101 So. 37; Amos v. Gunn, 84 Fla. 285, 94 So. 615.

Counsel for respondents pose for adjudication the following question: Where an Act passed by the Legislature was properly enrolled, authenticated, certified, and submitted to the Governor for his approval on May 8, 1947, and on May 13, 1947 (a Sunday having intervened), said enrolled Bill

was voluntarily returned by the Governor to the House of Representatives, at its request, for further consideration, may the House of Representatives, on May 13, 1947, reconsider the vote by which the Act passed, place the Act back on second reading and indefinitely postpone further consideration thereof?

Our former adjudications are a full and complete answer to this question. Section 28 of Article III of the Constitution provides that every Bill that may have passed the Legislature shall, before becoming a law, be presented to the Governor; if he approves it he shall sign it, but if not he shall return it with his objections to the House in which it originated; if any Bill shall not be returned within five days (Sunday excepted) after it shall have been presented to the Governor, the same shall be a law, in like manner as if he had signed it. The Bill presented to the Governor should be the same as passed by the two houses of the Legislature. Gwynn v. Hardee, 92 Fla. 543, 110 So. 343. Every Bill passed by the Legislature, duly presented to the Governor, unless vetoed by him within the time limited by the Constitution, becomes a law. Croissant v. DeSoto Improvement Co., 87 Fla. 530, 1011 So. 37. Neither the House of Representatives nor the Senate of Legislature of Florida can by independent resolution recall from hands of Governor a bill which has been duly passed by the Legislature, has been duly authenticated, and transmitted to the Governor for his consideration. State ex rel. Florida Portland Cement Co. v. Hale, supra.

It is not disputed that House Bill 122, as amended, passed both the House and Senate of the 1947 session of the Legislature. That it was then enrolled, authenticated, certified and presented to the Governor pursuant to Section 28 of Article III of the Constitution. Fruitless has been our efforts to find authority to sustain the attempted recall from the Governor of House Bill 122 by the resolution adopted by the House of Representatives; the return thereof by the Governor pursuant to the resolution of the House; a reconsideration vote by the House of the vote by which Bill 122 passed the House; the placing of House Bill 122 upon second reading, and during regular routine business of the House, upon consideration

thereof, House Bill 122 by a majority vote was by the House of Representatives indefinitely postponed.

It is our conclusion that a peremptory writ of mandamus, notwithstanding the return of the respondents, should be and the same accordingly is hereby granted.

It is so ordered.

THOMAS, C. J., BUFORD, ADAMS and BARNS, JJ., and PARKS, Associate Justice, concur.

TERRELL, J., dissents.

TERRELL, J., dissenting:

The majority opinion is predicated on our holding in Florida Portland Cement Company v. Hale, 129 Fla. 588, 176 So. 577. The factual difference in that case and this is material. In Florida Portland Cement Company the bill was recalled from the Governor's office in the same manner that it was in this case, but neither branch of the legislature took any action on it and at the conclusion of the session it was deposited in the office of the Secretary of State. Its status as a legislative act was not a whit disturbed.

When the act involved here was recalled by the House of Representatives it was immediately placed back on second reading and indefinitely postponed. The effect of this action was to revoke its passage and kill it as effectively as if done when it reached second reading on its initial journey through the House. This is common practice in legislative bodies. Either House may recall a bill any time before it has been approved by the Governor and deposited in the office of the Secretary of State.

The question presented is purely one of legislative procedure with which we have no more to do than the legislature has to do with the internal procedure of this Court. Under Section 6, Article III of the Constitution, each House is authorized to prescribe its rules of procedure without reference to the other House. In recalling the bill here the House was proceeding under its rules. As a matter of fact, either House may recall a bill from the Governor or from the other House and take such action on it as it deems proper. If the Governor had considered and disposed of the bill before the request for

recall reached him, then it would have been out of reach of the House, but prior to the Governor's action it may be recalled by either House.

In my view what we said in Florida Portland Cement case, was justified solely on the ground that no action was taken on the bill after it was recalled. If it is to carry the interpretation given it here, then this Court arrogates to itself authority to discipline and direct the legislature in an area which the constitution clothes it (the legislature) with exclusive power, an exercise of judicial supremacy that I find no warrant for.

The democratic process imposes duties and restraints on both the legislature and the judiciary. We are not the sole guardian of constitutional mandates, the legislature is under no less compulsion to abide by them than we are, and when it acts in a field delegated to it exclusively, it is nothing short of meddling for the judiciary to interfere with it. In my judgment the majority opinion in this case trespasses on jurisdiction vested by the Constitution in the legislature. I therefore dissent.

I think the return of the respondents tendered a complete defense and that the alternative writ should be quashed.