714 So.2d 453 (1998)
Lawton CHILES, as Governor, Petitioner,
v.
John B. PHELPS, et al., Respondents.
A CHOICE FOR WOMEN and Edward R. Watson, M.D., Petitioners,
v.
Daniel WEBSTER, et al., Respondents.
Nos. 92474, 92730.
Supreme Court of Florida.
July 2, 1998.
*454 Dan R. Stengle, General Counsel, Michelle Anchors, Deputy General Counsel, and Thomas Crapps, Assistant General Counsel, Office of the Governor, Tallahassee, on behalf of Governor Lawton Chiles; and Charlene Miller Carres, Tallahassee, and Bebe J. Anderson, The Center for Reproductive Law & Policy, New York City, on behalf of A Choice For Women and Edward R. Watson, M.D., Petitioners.
Thomas E. Warner of Warner, Fox, Seeley, Dungey & Sweet, L.L.P., Stuart, John E. Thrasher, Tallahassee, and J. Alex Villalobos, Tallahassee, on behalf of John B. Phelps, Clerk of the Florida House of Representatives, *455 and Daniel Webster, Speaker of the Florida House of Representatives, et al.; Donald L. Bell, General Counsel, and Andrea J. Moreland, Assistant General Counsel, on behalf of Sandra B. Mortham, Secretary of State, et al., Tallahassee, and D. Stephen Kahn, Senate Counsel, Tallahassee, on behalf of Toni Jennings, Senate President, Respondents.
HARDING, Chief Justice.
Governor Lawton Chiles petitions this Court for a writ of mandamus or other appropriate writ by which he challenges the legislature's override during the 1998 regular legislative session of his vetoes on Committee Substitute for House Bill 1227 and Committee Substitute for House Bill 1597[1] (hereinafter referred to as CS/HB 1227 and CS/HB 1597). Petitioners A Choice for Women and Dr. Edward Watson seek a writ of quo warranto determining that the legislature and its officers exceeded their authority in overriding the Governor's veto of CS/HB 1227. The Court has consolidated these cases. We have jurisdiction pursuant to article V, § 3(b)(8), Florida Constitution. For the reasons expressed below, we deny the petitions.
After adjournment of the 1997 regular legislative session, Governor Chiles vetoed several bills passed during that session. Pursuant to Article III, section 8(b), Florida Constitution, the Governor filed the vetoed bills and his signed objections with the Secretary of State. The Governor convened the legislature in November 1997 for a five-day special session on educational facilities and funding. Immediately before the special session, the Secretary of State presented the Speaker of the House with the house bills passed by the legislature but vetoed by the Governor after the 1997 regular session and his veto messages thereon. The veto messages were entered on the House Journal. The legislature did not consider the vetoed bills before adjournment of the special session.
Immediately before the 1998 regular session, Governor Chiles filed a petition for writ of mandamus directing the Clerk and Speaker of the House to return all vetoed bills and signed objections from the 1997 regular session to the Department of State, as he asserted section 15.07, Florida Statutes (1997) required.[2] This Court continued the case until fifteen days after the end of the regular legislative session.
During the 1998 regular session, the House and Senate voted to override the Governor's vetoes on CS/HB 1227 and CS/HB 1597. Those laws became effective sixty days after May 1, 1998, the end of the 1998 regular session.
Petitioners allege that under Article III, section 8, Florida Constitution, the legislature was required to override the vetoed bills at the 1997 special session or lose the authority to override. Petitioners further allege that the Clerk of the House maintains possession of the remaining vetoed bills from the 1997 regular session in violation of section 15.07, Florida Statutes.
According to their petition, A Choice for Women is a clinic which provides abortions and other services, including those prohibited by CS/HB 1227. Dr. Watson is the medical director of the clinic and a doctor who performs abortions and uses other procedures prohibited by the bill.
As an initial matter, respondents argue that this Court lacks jurisdiction to consider or should refrain from addressing the petitions. They assert that the separation of powers doctrine precludes any attempt by *456 the executive or judicial branches to direct or prohibit actions by the legislature or its officers in the exercise of their legislative duties. The separation of powers doctrine provides that "[t]he powers of the state government shall be divided into legislative, executive, and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." Art. II, § 3 Fla. Const.
We have interpreted this to require the judiciary to "refrain from deciding a matter that is committed to a coordinate branch of government by the demonstrable text of the constitution." McPherson v. Flynn, 397 So.2d 665, 667 (Fla.1981) (constitution gives legislature sole power to determine qualifications of its members). See Moffitt v. Willis, 459 So.2d 1018 (Fla.1984) (court lacked jurisdiction to determine whether legislature violated its internal rules of procedure). However, as the highest court of the judicial branch of government, one of our primary judicial functions is to interpret statutes and constitutional provisions. Locke v. Hawkes, 595 So.2d 32, 36 (Fla.1992). In carrying out this function, we do not violate the separation of powers doctrine by determining whether a legislative enactment was constitutionally adopted.
Respondents claim that the Governor lacks authority to bring the instant petition, because article IV, section 1(b), Florida Constitution, does not specifically provide that the Governor may sue the legislature.[3] However, this Court historically has taken jurisdiction of writ petitions where members of one branch of government challenged the validity of actions taken by members of another branch. See Florida House of Representatives v. Martinez, 555 So.2d 839 (Fla. 1990) (mandamus petition by House of Representatives challenging governor's exercise of veto power); Martinez v. Martinez, 545 So.2d 1338 (Fla.1989) (quo warranto petition by house member challenging governor's authority to include within call for special session consideration of issue listed in call of previous special session); Florida Senate v. Graham, 412 So.2d 360 (Fla.1982) (action by Senate questioning governor's constitutional authority to limit special apportionment session to less than thirty days). Kirk v. Baker, 224 So.2d 311 (Fla.1969) (petition for mandamus or prohibition by governor against Dade County judge).
Further, we have recognized that members of the legislature have standing as citizens and taxpayers to challenge alleged unconstitutional acts of the executive branch. See House of Representatives v. Martinez, 555 So.2d at 843; Thompson v. Graham, 481 So.2d 1212, 1213 n. 2 (Fla.1985); Brown v. Firestone, 382 So.2d 654, 662 (Fla.1980). Although Governor Chiles has filed the instant petition as Governor, in House of Representatives v. Martinez, we found the individual House members to have standing as taxpayers despite the fact that the House of Representatives was named as petitioner. Respondents advance no reason why the Governor should not be afforded the same standing as members of the legislature have historically been afforded.
Additionally, petitioners A Choice for Women and Dr. Watson filed their petition as members of the general public. We have held that members of the general public seeking enforcement of a public right may obtain relief through quo warranto. See Martinez v. Martinez, 545 So.2d at 1339 ("In quo warranto proceedings seeking the enforcement of a public right the people are the real party to the action and the person bringing suit `need not show that he has any real or personal interest in it.'") (footnote omitted) (quoting State ex rel. Pooser v. Wester, 126 Fla. 49, 53, 170 So. 736, 737 (1936)). The "public right" at issue in Martinez was the right to have the Governor perform his duties and exercise his powers in a constitutional manner. 545 So.2d at 1339 n. 3. A similar public right is at issue here, i.e., the right to have the legislature and its leaders exercise their powers in a constitutional manner. *457 Therefore, quo warranto is an appropriate method to bring the instant challenge.[4]
Although respondents argue that the legislature as a body is not a state officer or agency for purposes of article V, section 3(b)(8), Florida Constitution,[5] the petitioners challenge the authority of the Speaker of the House and the Senate President to allow their respective bodies to vote on the vetoed bills. In addition, they challenge the authority of the Clerk of the House to continue to hold the remaining vetoed bills. Respondents are state officers subject to this Court's jurisdiction for purposes of this proceeding. See State ex rel. Schwartz v. Bledsoe, 159 Fla. 243, 31 So.2d 457 (1947).
We have stated that under ordinary circumstances, the constitutionality of a statute should be challenged by way of a declaratory judgment action in circuit court. Moreau v. Lewis, 648 So.2d 124, 126 (Fla.1995). However, we have accepted jurisdiction in original proceedings where the functions of government would be adversely affected absent an immediate determination by this Court. Id.; Dickinson v. Stone, 251 So.2d 268 (Fla.1971). Because the issue in these petitions creates uncertainty for those required to enforce these laws, as well as for those who may be subject to their reach, we believe that an immediate determination is required.[6] Accordingly, we exercise our jurisdiction to consider the instant petitions.
Turning to the merits of the petitions, the issue before us is whether the legislature violated article III, section 8, of the Florida Constitution by failing to take up the vetoed bills at the November 1997 special session and then voting to override the Governor's vetoes at the 1998 regular session. Petitioners argue that the legislature lost its opportunity to override the Governor's vetoes when it did not consider the vetoed bills at the November 1997 special session. Respondents argue that because the constitution neither expressly nor necessarily implies when the legislature must take up a veto message, the Court is without authority to impose such a restriction.
"Any inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision's explicit language." Florida Soc'y of Ophthalmology v. Florida Optometric Ass'n, 489 So.2d 1118, 1119 (Fla.1986). Article III, section 8 provides:
(a) Every bill passed by the legislature shall be presented to the governor for his approval and shall become a law if he approves and signs it, or fails to veto it within seven consecutive days after presentation. If during that period or on the seventh day the legislature adjourns sine die or takes a recess of more than thirty days, he shall have fifteen consecutive days from the date of presentation to act on the bill....
(b) When a bill or any specific appropriation of a general appropriation bill has been vetoed by the governor, he shall transmit his signed objections thereto to the house in which the bill originated if in session. If that house is not in session, he shall file them with the secretary of state, who shall lay them before that house at its next regular or special session, and they shall be entered on its journal.
(c) If each house shall, by a two-thirds vote, re-enact the bill or reinstate the vetoed specific appropriation of a general appropriation bill, the vote of each member voting shall be entered on the respective journals, and the bill shall become law or the specific appropriation reinstated, the veto notwithstanding.
Section 8(b) requires the Secretary of State to lay the Governor's veto messages bills before the appropriate house "at its next regular or special session." Its only mandate *458 to the legislature is that the appropriate legislative body enter the messages on its journal. There is no express requirement that the legislature take up the veto messages at the time they are presented. This stands in contrast to section 8(a) which contains an express limitation on the time in which the Governor must veto a bill. In the absence of an expressed requirement that the legislature take up the vetoed bills at the special session, we cannot conclude that it acted without authority in postponing consideration of the vetoed bills until the next regular session.[7]
This decision is guided, in part, by the nature of our state constitution. We have noted that:
The Constitution of this state is not a grant of power to the Legislature, but a limitation only upon legislative power, and unless legislation be clearly contrary to some express or necessarily implied prohibition found in the Constitution, the courts are without authority to declare legislative Acts invalid. The Legislature may exercise any lawmaking power that is not forbidden by organic law.
Savage v. Board of Public Instruction, 101 Fla. 1362, 1369, 133 So. 341, 344 (1931) (citing State v. [Bryan], 50 Fla. 293, 39 So. 929 (1905); Jordan v. Duval County, 68 Fla. 48, 66 So. 298 (1914); and Stone v. State, 71 Fla. 514, 71 So. 634 (1916)). The legislature's power is inherent, though it may be limited by the constitution. Thus, the legislature "looks to the Constitution for limitations on its power and if not found to exist its discretion reasonably exercised is the sole brake on the enactment of legislation." State v. Board of Pub. Instruction, 126 Fla. 142, 151, 170 So. 602, 606 (1936).
Petitioners suggest that amendments to the 1968 constitution evidence an intent to require the legislature to consider the vetoed bills during the special session. The 1885 constitution required that the Governor file vetoed bills and his objections thereto in the office of the Secretary of State, who was to "lay the same before the Legislature at its next session." Art. III, § 28, Fla. Const. (1885). The constitution was amended in 1968 to require the Secretary of State to lay the Governor's objections before the appropriate house at its next "regular or special session." Art. III, § 8(b), Fla. Const.
No party has provided, nor has this Court found, direct evidence of the intent underlying this change. However, it seems likely that the change was intended to codify the interpretation given to the 1885 constitution by Attorneys General and to provide the legislature with the ability to consider veto overrides at a special session if it so desired. In a 1944 opinion, Attorney General Watson determined that the constitution did not require that veto messages be sent to a special session. See Op. Att'y Gen. Fla. 044-158 (1944). Later, Attorney General Ervin addressed the question of whether the legislature could consider vetoed bills at a special session held before the next regular session. The Attorney General noted that under the long-standing construction of article III, section 28, of the 1885 constitution, the Secretary of State did not lay the vetoed bills before the legislature except when it was convened in regular session. However, the Attorney General expressed doubt that the legislature convened in special session would be precluded from considering the vetoed bills upon appropriate action. Op. Att'y Gen. Fla. 061-67 (1961).
In a 1967 opinion Attorney General Faircloth addressed the Governor's power to recall a bill vetoed by him and filed with the Secretary of State. In connection with the Secretary of State's duty to present a vetoed bill and veto message to the "next session" of the legislature, the Attorney General referred to his informal opinion to Senator John Mathews. There, the Attorney General determined that while it was not mandatory for the legislature to consider the Governor's current veto messages until the next regular session, the legislature could, by two-thirds vote of each house, consider such veto messages at an extra or special session convened *459 before the next regular session. See Op. Att'y Gen. Fla. 067-55 (1967).
In a 1976 advisory opinion to Representative George Sheldon, Attorney General Shevin addressed the following question:
Must the legislature take action to either sustain or override gubernatorial vetoes during a special or extra session or can consideration of such vetoes be delayed until the next regular session?
Op. Att'y Gen. Fla. 076-243 (1976). The Attorney General analyzed these prior Attorney General opinions and concluded:
While it could be argued that the 1968 Constitution has altered this construction and has made consideration of veto messages mandatory at special sessions, I am unable to reach such a conclusion in the absence of specific evidence of such an intent. Significantly, the comments accompanying s. 8(b), Art. III, State Const., do not make mention of such an intent to alter the previous construction given the 1885 Constitution by three former Attorneys General. To the contrary, a persuasive argument can be made that the insertion of the word "special" in the 1968 Constitution was done in order to give the Legislature the power to consider vetoed bills during the special session if it desired to do so. To flatly state, however, that such action is required or mandated is a different matter, and I am unable to construe s. 8(b), Art. III in such a manner in the absence of unequivocal evidence of an intent to impose such a constitutional requirement upon the Legislature.
We agree with this analysis. We note that the Attorney General's construction of this provision is entitled to considerable weight. See Florida Soc'y of Ophthalmology v. Florida Optometric Ass'n, 489 So.2d at 1120-21 ("[E]stablished constructions of constitutional provisions are `presumptively correct unless manifestly erroneous.'") (quoting State v. Kaufman, 430 So.2d 904, 907 (Fla. 1983)).
Further, to interpret article III, section 8(b) as urged by petitioners would create conflict with article III, section 3(c)(1), Florida Constitution. That provision requires a vote of two-thirds of the membership of each house in order to take up legislative business outside the purview of the proclamation convening the special session or of a communication from the Governor.[8] We are precluded from construing one constitutional provision in a manner which would render another provision superfluous, meaningless, or inoperative. See State v. Butler, 70 Fla. 102, 69 So. 771, 781 (1915). Although petitioners claim that the legislature has in the past taken up vetoed bills during a special session without a vote of two-thirds of the membership, this is not a basis for finding that the legislature had the authority to do so.
To require the legislature to consider during a special session all bills vetoed after adjournment of the regular session defeats the obvious intent of article III, section 3(c) that special sessions be focused on a particular subject matter absent special circumstances. The constitution sets only outer limits on the length of special sessions. See Art. III, § 3(d) (special session shall not exceed twenty consecutive days unless extended by three-fifths vote of each house); In re Advisory Opinion to the Governor, 206 So.2d 212 (Fla.1968) (governor may in the exercise of his discretion determine that an extra session of less than twenty days is in public interest and fix a shorter time period). Thus, the Governor has the ability to call a special session for a short duration. Votes to override vetoes may be controversial and time consuming, drawing legislators' time and attention away from the matters they were called to address during a special session. In order to give full effect to article III, section 3, the legislature must be allowed to focus its attention on the subject matter of a special session, particularly where the length of the session may be very limited.
Accordingly, we hold that the legislature did not violate article III, section 8, Florida *460 Constitution, by overriding the Governor's vetoes of CS/HB 1227 and CS/HB 1597 at the 1998 regular session rather than at the November 1997 special session. Although the Governor alleges that the Clerk of the House continues to hold the remaining vetoed bills from the 1997 special session, there is no suggestion at this time that the House intends to act on those bills.
We find no merit in petitioners' claim that the Clerk's continued holding of the vetoed bills violates section 15.07, Florida Statutes (1997). That statute contemplates the filing of the journals and all acts, resolutions, and other papers passed or acted on during a just-adjourned session. We do not interpret section 15.07 to require vetoed bills which were not taken up by the legislature to be filed with the Department of State.
For the reasons set forth above, the petitions are denied.
It is so ordered.
OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] CS/HB 1227 bans partial birth abortions except in certain limited circumstances. CS/HB 1597 broadens the former testimony hearsay exception under section 90.803(22), Florida Statutes (1997).
[2] Section 15.07, Florida Statutes (1997) provides:

All original acts and resolutions passed by the Legislature, and all other original papers acted upon thereby, together with the Journal of the Senate, and the Journal of the House of Representatives, shall, immediately upon the adjournment thereof, be deposited with, and preserved in, the Department of State, by which they shall be properly arranged, classified, and filed, provided that the journal of the executive session of the Senate shall be kept free from inspection or disclosure except upon the order of the Senate itself or some court of competent jurisdiction.
[3] Article IV, section 1(b), Florida Constitution, provides: "The governor may initiate judicial proceedings in the name of the state against any executive or administrative state, county or municipal officer to enforce compliance with any duty or restrain any unauthorized act."
[4] Because all petitioners request relief by way of quo warranto, we do not address the applicability of mandamus to these facts.
[5] Article V, section 3(b)(8), provides that this Court "[m]ay issue writs of mandamus and quo warranto to state officers and state agencies."
[6] We also note that there are no material facts in controversy here. Further, given the constitutional question presented, this case would in all likelihood ultimately be decided by this Court. Interests of judicial economy favor an immediate resolution.
[7] We note that the legislature's override took place at the same time it would have had there been no intervening special session.
[8] The two-thirds vote "of the membership" required by this provision is greater than the two-thirds vote required to override a veto. See Art. X, § 12(e), Fla. Const. (vote of a legislative house means the vote of a majority or other specified percentage of those voting; "Of the membership" means "of all members thereof.").