BELL, J.,
dissenting.
Guided by the perspective that this Court is a court of limited jurisdiction and reading the applicable constitutional provisions in pari materia, I conclude that this Court’s jurisdiction to render an advisory opinion regarding an initiative petition is limited to those issues concerning the validity of the initiative petition itself. And, because the validity of the initiative petition itself is not dependent upon the validity of the financial impact statement, I dissent to this Court’s advisory opinion on the financial impact statement in this case.[2]
The majority concludes that this Court has jurisdiction to render an advisory opinion on the validity of the financial impact statement. Specifically, by focusing upon the references to “general law” in article IV, section 10, and article V, section 3(b)(10) of the Florida Constitution, the majority determines that this case is “one of the rare instances where this Court’s constitutional jurisdiction incorporates the provisions set forth by general law.” Majority op. at 211.[3] Having concluded that it may look outside the constitution itself for *216 jurisdiction, the majority then looks to the “general law,” section 100.371, Florida Statutes, which clearly contemplates this Court’s review of financial impact statements. See id. at 211-13; § 100.371(5)(c)-(e), Fla. Stat. In other words, the basis of the majority’s jurisdictional conclusion is that when article IV, section 10, and article V, section 3(b)(10) are construed in pari materia with the general law in section 100.371, this Court has jurisdiction to render an advisory opinion regarding financial impact statements. Majority op. at 213-14. However, as I explain below, I believe the plain language of our constitution leads to the conclusion that this Court lacks jurisdiction.
At the outset, I note that this Court is one of limited jurisdiction. Accordingly, “[t]he jurisdiction of this Court extends only to the narrow class of cases enumerated in article V, section 3(b) of the Florida Constitution.” Gandy v. State, 846 So.2d 1141, 1143 (Fla.2003) (quoting Mystan Marine, Inc. v. Harrington, 339 So.2d 200, 201 (Fla.1976)). As we recently stated in In re Holder, 945 So.2d 1130, 1134 (Fla.2006),
[B]efore this Court can take action, the Florida Constitution must give us the power to do so. This principle recognizes that our authority is not boundless; it is circumscribed by the language of the Florida Constitution. Nothing can be more consistent with the concept of judicial restraint.
Further, “[njeither this court nor the Legislature has the power to extend the jurisdiction of this court beyond the confines of the constitutional prescription.” City of Dunedin v. Bense, 90 So.2d 300, 302 (Fla.1956).
In light of this limitation to our jurisdiction, I examine the plain language of the constitutional provisions cited by the majority (section 3(b)(10) of article V and section 10 of article IV) as well as the plain language of two provisions not discussed by the majority (sections 3 and 5 of article XI). See Chiles v. Phelps, 714 So.2d 453, 457 (Fla.1998) (“Any inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision’s explicit language.”) (quoting Fla. Soc’y of Ophthalmology v. Fla. Optometric Ass’n, 489 So.2d 1118, 1119 (Fla.1986)).
The plain language of article V, section 3(b)(10), empowers this Court to render advisory opinions to the attorney general when requested pursuant to article IV, section 10. Specifically, article V, section 3 provides in part as follows:
(b) JURISDICTION. — The supreme court:
[[Image here]]
(10) Shall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law.
(Emphasis added.) In turn, section 10 of article IV provides:
SECTION 10. Attorney General.— The attorney general shall, as directed by general law, request the opinion of the justices of the supreme court as to the validity of any initiative petition circulated pursuant to Section S of Article XI. The justices shall, subject to their rules of procedure, permit interested persons to be heard on the questions presented and shall render their written opinion no later than April 1 of the year in which the initiative is to be submitted to the voters pursuant to Section 5 of Article XI.
(Emphasis added.) Thus, while the attorney general must request the advisory opinion as prescribed by general law, our *217 constitution expressly limits the subject matter of such a request “to the validity of an initiative petition circulated pursuant to section 3 of article XI.”[4] This being the case, this Court’s jurisdiction is limited to the validity of the initiative petition. And, if the validity of the petition is not dependent upon the validity of the financial impact statement, this Court does not have jurisdiction to render an opinion on the validity of the financial impact statement. As I mil now show, nothing in our constitution or our prior precedent suggests that the validity of an initiative petition is dependent upon the financial impact statement.
Based upon the plain language of our constitution, the validity of a petition circulated under section 3 of article XI is only dependent upon the limited factors discussed in section 3 of article XI. Significantly, section 10 of article IV, which authorizes the attorney general to seek an opinion regarding an initiative petition, only refers to section 3 of article XI. And section 3 of article XI only discusses the substance of the initiative petition itself as well as the number of signatures required for filing.[5] Specifically, section 3 of article XI states:
SECTION 3. Initiative. — The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the custodian of state records a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.
Accordingly, this Court’s only duty is to look to the substance of the initiative petition and determine whether the revision or amendment proposed by initiative “em-bracéis] but one subject and matter directly connected therewith,” with an exception for provisions that limit the “power of government to raise revenue.” Art. XI, § 3, Fla. Const.; see Advisory Op. to Att’y Gen. re Protect People, Especially Youth, from Addiction, Disease, & Other Health Hazards of Using Tobacco, 926 So.2d 1186, 1190 (Fla.2006) (“The Court’s inquiry, when determining the validity of initiative petitions, is limited to two legal issues: whether the petition satisfies the single-subject requirement of article XI, section 3, Florida Constitution, and whether the ballot titles and summaries are printed in clear and unambiguous language pursuant to section 101.161, Florida Statutes (1999).”) (quoting Advisory Op. to Att’y General re Amendment to Bar Gov’t from
*218 Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 890-91 (Fla.2000)). Moreover, our prior precedent does not state that in order to determine whether an initiative petition is valid, this Court must find that the financial impact statement is also valid. On the contrary, this Court has repeatedly noted over the years that our role in reviewing the initiative petition is very limited. See Advisory Op. to Att’y General re Tax Limitation, 644 So.2d 486, 489 (Fla.1994).
Most importantly, nothing in the plain language of our constitution suggests that the validity of the petition, for purposes of section 3 of article XI, is dependent upon this Court’s determination that the financial impact statement is also valid. Section 8 of article XI makes no reference to a financial impact statement as a part of the initiative petition. It certainly does not require that a proposed financial impact statement accompany the initiative petition.[6] And section 10 of article IV does not authorize the attorney general to request an advisory opinion regarding the validity of the independent financial impact statement. Therefore, because nothing in our constitution indicates that the validity of an initiative petition is dependent upon the validity of the financial impact statement, this Court lacks jurisdiction to issue an opinion regarding the validity of a financial impact statement.
Indeed, article XI, section 5(c) is the sole reference in Florida’s constitution to financial impact statements. Specifically, article XI, section 5(c), provides:
(c) The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3.
(Emphasis added.) However, reading sections 3 and 5 of article XI, it is clear that the initiative petition and the financial impact statement are independent considerations.[7] For instance, section 5(c) of article XI requires that the Legislature, not the citizens filing the initiative petition, make provision for the financial impact statement. Also, this financial impact statement is not even prepared until after an initiative is filed pursuant to section 3 of article XI. Thus, the financial impact statement mandated by section 5 of article XI is an additional condition that must be met before the otherwise valid initiative petition is placed before the voters for election. Therefore, the grant of jurisdiction to render an advisory opinion on the validi *219 ty of an initiative petition itself does not encompass the independent consideration of the validity of the financial impact statement.
To summarize, guided by the perspective that this Court is a court of limited jurisdiction and reading article TV, section 10, article V, section 3(b)(10), and article XI, sections 3 and 5, in pari materia, I conclude that this Court’s jurisdiction to render an advisory opinion regarding an initiative petition is limited to those issues concerning the validity of the initiative petition itself. This jurisdiction does not include issuing an advisory opinion regarding the validity of the separately mandated financial impact statement. This being the case, it is axiomatic that this Court’s jurisdiction cannot be expanded by general law to address issues which the constitution, by its plain language, has expressly limited. Therefore, section 100.371, Florida Statutes, which contemplates that this Court will review financial impact statements, is an invalid attempt to expand this Court’s constitutionally limited jurisdiction.[8] And, respectfully, the majority’s re-banee upon that statute as a basis for jurisdiction to render its advisory opinion in this case is improper.
Accordingly, I find that this Court does not have jurisdiction to render an advisory opinion regarding the validity of financial impact statements. Therefore, I respectfully dissent.
CANTERO, J., concurs.

. In this opinion, I explain the reasoning behind my unelaborated dissents from this Court's most recent review and approval of financial impact statements corresponding to initiative petitions. See Advisory Op. to Att’y Gen. re Funding of Embryonic Stem Cell Research, 959 So.2d 195, 203 (Fla. 2007) (Bell, J., concurring in part and dissenting in part); Advisory Op. to Att’y Gen. re Prohibiting State Spending for Experimentation that Involves the Destruction of a Live Human Embryo, 959 So.2d 210, 215 (Fla. 2007) (Bell, J., concurring in part and dissenting in part).

. Though I disagree with the majority’s conclusion in this case, I do not intend to imply that this Court can never have jurisdiction by reference to general law. I agree with the majority that general law establishes this Court’s jurisdiction in “rare instances,” but I believe this is true only when expressly provided by the constitution. In this case, based on the specific issue and the particular constitutional provisions involved, I cannot agree with the majority that this case presents one of those rare instances.

. Admittedly, both article V, section 3(b)(10), and article IV, section 10, reference enabling legislation. But the only advisory opinion mentioned is one that addresses the validity of an initiative petition circulated pursuant to section 3 of article XI. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const. No mention is made of rendering an advisory opinion regarding the validity of any financial impact statement issued pursuant to section 5(c) of article XI.

. Additionally, general law provides that the petition signed by the electors must include the ballot summary and title, both of which are prepared by the sponsor. §§ 101.161(2), 15.21(2), 100.371(2), Fla. Stat. (2006); Fla. Admin. Code 1S-2.009(1), (2)(d), (3). Also, the form must be approved prior to or as a prerequisite to circulation. § 100.371(2), Fla. Stat; Fla. Admi-.Code 1S-2.009(1)-(2).

. Consistent with article XI, section 3, general law, in particular section 15.21(2), Florida Statutes (2006), defines an "initiative petition” by providing that it consists of the “ballot title, substance, and text of the proposed revision or amendment.” This definition is also consistent with rule 1S-2.009, Florida Administrative Code, “Constitutional Amendment by Initiative Petition,” which requires submission of the "initiative petition” (which includes, among other things, the ballot title and summary) to the Division of Elections "for approval as to format prior to circulation of the proposed initiative amendment.” See Fla. Admin. Code 1S-2.009(1), (2)(d). There is no mention in these provisions of a financial impact statement.

. The Legislature has provided, by general law, that its statement of the financial impact will be prepared by the Financial Impact Estimating Conference See § 100.371(1), Fla. Stat.; Fla. Admin. Code 1S-2.009(5) ("Other than providing information or a method by which the petition form may be returned by mail to the sponsoring committee, no additional information or materials that support the proposed amendment shall be printed directly on the form.”). The financial impact statement is not prepared by the sponsor and is not signed by any electors.

. My conclusion that this Court does not have jurisdiction to review the validity of a financial impact statement does not mean that a financial impact statement cannot be reviewed by a court of original jurisdiction to ensure its compliance with general law. It seems that a court of original jurisdiction may review the financial impact statement for compliance with section 100.371. See art. V, §§ 5-6, Fla. Const.; § 26.012, Fla. Stat. (2006) (prescribing the jurisdiction of the circuit courts); § 34.01, Fla. Stat. (2006) (prescribing the jurisdiction of the county courts). In fact, section 100.371(5)(c)(2) states that "[a]ny financial impact statement that a court finds not to be in accordance with this section shall be remanded solely to the Financial Impact Estimating Conference for redrafting.” (Emphasis added.)
Further, I recognize that this Court has reviewed financial impact statements in the past and that we adopted Florida Rule of Appellate Procedure 9.510(b)(7) in November 2006, indicating that we will continue reviewing financial impact statements as a part of our advisory opinion to the attorney general. However, prior to this case, this Court has never specifically addressed its jurisdiction to review financial impact statements. Thus, our past precedent has never spoken to, and therefore is not binding on the question of, whether this Court has jurisdiction to review financial impact statements. But now that the question is before us, we must defer to the express language of the Florida Constitution and the limitations it places on this Court's original jurisdiction.