# Supreme Court of Florida

_____

No. SC2023-1333

_____

**WEST FLAGLER ASSOCIATES, LTD., et al.,**
Petitioners,

vs.

**RON D. DESANTIS, etc., et al.,**
Respondents.

March 21, 2024

SASSO, J.

Petitioners—two companies and one individual involved in Florida's gaming industry—have filed this petition for a writ of quo warranto challenging a gaming compact between the State and the Seminole Tribe. Petitioners argue that a sports betting provision contained in the compact violates article X, section 30 of the Florida Constitution, which limits the expansion of casino gambling in the state to the citizens' initiative process. Framed as it is, the petition presents nothing other than a challenge to the substantive constitutionality of the law ratifying the compact. But quo warranto

is not, and has never been, the proper vehicle to obtain a declaration as to the substantive constitutionality of an enacted law. For that reason, we deny the petition because the relief that Petitioners seek is beyond what the writ of quo warranto provides.

I.

In 2021, Governor DeSantis entered into a gaming compact with the Seminole Tribe pursuant to the federal Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 (2018), and as contemplated by section 285.712(1), Florida Statutes (2023). The Florida Legislature subsequently ratified the compact pursuant to section 285.712(2), Florida Statutes. Among other forms of gaming, the compact authorizes mobile sports betting by which participants may place sports wagers with the Seminole Tribe through a mobile device. Participants may be physically located anywhere in Florida when they place a wager, not only on tribal lands. Then, regardless of where the bets are placed, the wagers are "deemed" to occur on tribal lands.

Petitioners, West Flagler Associates, Ltd., Bonita-Fort Myers Corporation d/b/a Bonita Springs Poker Room, and Isadore

Havenick, filed this petition for a writ of quo warranto challenging the compact. Petitioners argue that the Governor and the Legislature exceeded their constitutional authority by enacting the compact because the mobile betting provisions violate article X, section 30 of the Florida Constitution, which limits the authorization of casino gambling to the citizens' initiative process. For relief, Petitioners request a declaration from this Court that the implementing law is unconstitutional[1] and ask that we enjoin the Seminole Tribe from continuing to operate mobile sports betting.

In response, Respondents set forth several reasons why the compact is consistent with article X, section 30. But as a threshold matter, Respondents argue there are reasons other than on the merits for why this Court should deny the petition for quo warranto.

---

1. Petitioners request this Court to declare that: (1) Respondents' respective conduct in executing the compact and enacting and signing the implementing law exceeded their authority under the Florida Constitution to the extent that they permitted off-reservation sports betting throughout the state; (2) a voter-approved constitutional amendment initiated by a citizens' petition is the exclusive means by which off-reservation sports betting can be authorized in Florida; and (3) such a voter-approved constitutional amendment is necessary for those portions of the compact and implementing law to be valid in this state.

- 3 -

To that end, Respondents say we should (1) deny the petition on a discretionary basis because Petitioners waited too long to seek relief; (2) deny the petition because the Seminole Tribe, who Respondents argue is an indispensable party, has not been joined to this action; (3) recede from our precedent that is inconsistent with the original conception of quo warranto, which functioned primarily to oust individuals who had no title to state power from the use of that power and limited who could bring an action to the Attorney General; (4) at a minimum recede from those cases which have determined that citizens and taxpayers have standing to bring quo warranto actions; and (5) deny the petition because Petitioners seek a declaration as to the substantive constitutionality of an enacted law.

Respondents' last argument is dispositive and renders the others unnecessary. As we will explain, we agree with Respondents that quo warranto is not a substitute for what Petitioners seek— declaratory and injunctive relief as to the substance of the law ratifying the gaming compact. It is that argument to which we now turn.

II.

Our authority to issue the extraordinary writ of quo warranto is derived from section 3(b)(8) of article V of the Florida Constitution, which authorizes this Court to issue writs of quo warranto to state officers and state agencies.  Meaning "by what authority," quo warranto is a common law remedy that was historically used to "test the right of a person to hold an office of franchise or exercise some right or privilege the peculiar powers of which are derived from the state."  *State v. Gerow*, 85 So. 144, 145 (Fla. 1920).

Quo warranto's earliest application was narrow in scope and limited by its common law background.  *See, e.g.*, *State ex rel. Landis v. Prevatt*, 148 So. 578, 579 (Fla. 1933) ("The action in the nature of quo warranto is a common-law remedy, its office and scope depending upon the use and limitations authorized by the common law and statute laws of England, as they existed as of the date that they were adopted, by the laws of this state, in the absence of statutory modification.").  But over time, the use of the writ has drifted from its common law moorings.  Since those early

days, this Court has shifted its focus in quo warranto cases to question whether a state officer has "improperly exercised a power or right derived from the State." *See, e.g., Fla. House of Representatives v. Crist*, 999 So. 2d 601, 607 (Fla. 2008). Through this lens, this Court has used the writ to test separation of powers issues, especially where one branch sues another, to settle claims over entitlement to an office, and to resolve disputes over the procedural mechanics of government.

Relying on this Court's more expansive view of quo warranto, Petitioners contend that the writ may be employed to provide the relief they seek, arguing "the Governor and Legislature exceeded their powers in authorizing off-reservation sports betting." This would be an appropriate use of the writ, Petitioners argue, because this Court has used the writ to determine whether the Governor and the Legislature "improperly exercised" their respective authority.

The problem with Petitioners' claim becomes apparent when we differentiate their specific argument from their more general statements. Petitioners argue that the "improper exercise" of power

includes an officer transgressing constitutional limits on the officer's authority, so it follows that the Legislature's enactment of a substantively unconstitutional law, and the Governor's agreement to a substantively unconstitutional compact, is an improper exercise of both powers. In other words, Petitioners argue the Governor and Legislature "improperly exercised" their respective authority because the substance of the compact, reflected in sections 285.710(3)(b)-(14) and 849.142, Florida Statutes (2023), the implementing laws, is inconsistent with article X, section 30.

This is problematic because however far afield from its original function the current use of quo warranto has wandered, this Court has never permitted use of the writ in the manner which Petitioners seek—to address the substantive constitutionality of an enacted law. *See, e.g.*, *Chiles v. Phelps*, 714 So. 2d 453, 457 (Fla. 1998) ("We have stated that under ordinary circumstances, the constitutionality of a statute should be challenged by way of a declaratory judgment action in circuit court."). Furthermore, we have made clear that the writ of quo warranto is not a substitute for

declaratory and injunctive relief.  *See Detzner v. Anstead*, 256 So. 3d 820, 823 (Fla. 2018).

Undiscouraged, Petitioners argue their challenge fits within existing boundaries, pointing to *Chiles*.  In that case, this Court entertained a writ of quo warranto sought by the Governor and an abortion clinic against legislative officers, including the House Speaker and the Senate President, seeking to challenge the Legislature's override of two vetoed bills.  714 So. 2d at 456.  We allowed the quo warranto challenge to proceed, even though "under ordinary circumstances, the constitutionality of a statute should be challenged by way of a declaratory judgment action in circuit court."  *Id.* at 457.  But *Chiles* was a challenge to the authority of the Speaker of the House and the Senate President to allow their respective bodies to vote on vetoed bills at a regular session even though a previous special session had been held after the Governor had vetoed the bills.  *Id.*  It was not a challenge as to whether the statutes at issue substantively conflicted with the constitution.  So that broad statement in *Chiles* cannot be read as an indication that

this Court is willing, under certain circumstances, to examine the substantive constitutionality of a law via quo warranto.

Similarly, Petitioners rely on *Florida House of Representatives v. Crist*, 999 So. 2d 601, to support their position that the compact may be challenged through quo warranto. But though that case involved the applicability of the writ of quo warranto to a gaming compact in Florida, it does not set forth a general rule that gaming compacts may be challenged through quo warranto actions. Instead, that case involved the specific question of whether the Governor had authority to bind the state to a compact without ratification by the Legislature. *See id.* at 609 ("The issue is whether . . . the Governor . . . had constitutional authority to execute the Compact without the Legislature's prior authorization or, at least, subsequent ratification."). That factual background distinguishes the case from Petitioners' challenge here, as Petitioners challenge the substance of the agreement reached by the Governor and ratified by the Legislature rather than the bare ability to act.

III.

Ultimately, the relief that Petitioners seek is beyond what quo warranto provides. We have never used the writ to test the substantive constitutionality of a statute, and we decline Petitioners' implicit invitation to expand the scope of the writ here. To do so would serve as an affront to an essential feature of quo warranto—that it is used to challenge the authority to exercise a state power rather than the merits of the action. In addition, considering Petitioners' request here would undermine the structure of article V of the Florida Constitution, which circumscribes our ability to review the substantive constitutionality of a statute and commits that review, in the first instance, to the trial courts. And because we reach our decision today based on existing limits to the scope of quo warranto, we similarly decline Respondents' invitation to reexamine precedent.

The petition is denied.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
LABARGA, J., concurs in result.

- 10 -

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – Quo Warranto

Raquel A. Rodriguez of Buchanan Ingersoll & Rooney PC, Miami, Florida, Sammy Epelbaum of Buchanan Ingersoll & Rooney PC, Miami, Florida, Hala Sandridge of Buchanan Ingersoll & Rooney PC, Tampa, Florida, and Chance Lyman of Buchanan Ingersoll & Rooney PC, Tampa, Florida,

> for Petitioners, West Flagler Associates, Ltd., a Florida Limited Partnership, Bonita-Fort Myers Corporation, a Florida Corporation d/b/a Springs Poker Room, and Isadore Havenick

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, Daniel William Bell, Chief Deputy Solicitor General, Christopher J. Baum, Senior Deputy Solicitor General, and Myles S. Lynch, Assistant Solicitor General, Office of the Attorney General, Tallahassee, Florida,

> for Respondents, Ron Desantis, in his capacity as Governor of the State of Florida, Paul Renner, in his capacity as Speaker of the Florida House of Representatives, and Kathleen Passidomo, in her capacity as President of the Florida Senate

Todd K. Norman of Nelson Mullins, Orlando, Florida, Olivia R. Share of Nelson Mullins, Orlando, Florida, and Beverly A. Pohl of Nelson Mullins, Boca Raton, Florida,

> for Amicus Curiae No Casinos, Inc.

Barry Richard of Barry Richard Law Firm, Tallahassee, Florida; and Joseph H. Webster of Hobbs, Straus, Dean & Walker, LLP, Washington, District of Columbia,

> for Amici Curiae Seminole Tribe of Florida

- 11 -